IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JOANN GILLINGHAM,                    *

    Plaintiff,                   *

vs.                                  *
                                    CASE NO: 3:07-CV-07 (CDL)
                                 *
THE MCGRAW-HILL COMPANIES, INC.,
                                 *
    Defendant.
                                 *

O R D E R

This case arises from Plaintiff JoAnn Gillingham's allegations that her employer, Defendant McGraw-Hill, breached an oral contract to pay Plaintiff a bonus of two and a half times her salary. Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 14). For the following reasons, Defendant's motion is granted.

BACKGROUND

Defendant McGraw-Hill is a book publisher that also sells textbooks to city and county school systems. Plaintiff JoAnn Gillingham worked for Defendant from 1983 until 1993, primarily as a sales representative. As part of her compensation during this period, Plaintiff was eligible to receive an annual bonus, referred to as an Incentive Compensation Award. The Incentive Compensation Award was calculated based upon a formula that compared Plaintiff's actual sales with a sales quota assigned by Defendant and the expenses incurred in reaching that quota. This formula was published

1

in a document known as the Incentive Compensation Award plan. During Plaintiff's first stint of employment with Defendant, the Incentive Compensation Award had a relatively low cap, and therefore it "was not a serious incentive for the sales representatives." (Carson Aff. ¶ 3, Oct. 10, 2007.) The maximum Incentive Compensation Award earned by Plaintiff between 1983 and 1993 totaled about half of her salary.

In 1993, Plaintiff resigned from full-time employment but continued to work for Defendant on a per diem basis in Georgia. While attending a June 2003 sales meeting in this capacity, Plaintiff was approached by Missy Kozacik, Defendant's National Adoption Sales Manager. Kozacik had previously worked with Plaintiff and asked if Plaintiff would be interested in returning to work full time for Defendant as a sales representative in a prime Florida territory. Kozacik informed Plaintiff that the Incentive Compensation Award structure had significantly changed and that under the revised structure Plaintiff could earn up to two and a half times her salary for exceeding her assigned sales quotas.

Shortly after this conversation with Kozacik, Plaintiff attended another sales meeting in North Carolina. At this meeting, Plaintiff was approached by Kozacik and Ralph Carson, Defendant's Regional Vice-President. Both Kozacik and Carson encouraged Plaintiff to accept employment as a sales representative and reiterated that the new Incentive Compensation Awards were substantially higher than those offered during Plaintiff's first term of employment with the company. Plaintiff contends that at this meeting, Kozacik and Carson

2

promised that if Plaintiff accepted their job offer, she would be entitled to a bonus equivalent to two and a half times her salary for exceeding her sales quota. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 20, 21.)

Plaintiff alleges that she accepted this offer and began work as a sales representative in mid-June of 2003 with the understanding that she would not be entitled to an Incentive Compensation Award for 2003; rather, her first award would be based upon her 2004 sales performance and would be paid in 2005. (Pl.'s Dep. 81:25-83:10, Aug. 10, 2007.) In 2004, Plaintiff exceeded her sales quota and thus expected to receive an Incentive Compensation Award equivalent to two and a half times her salary. Plaintiff's actual award, however, was calculated based upon the written 2004 Incentive Compensation Award plan, and it totaled $33,510 before taxes. (*Id.* at 134:2-136:17.) Although the maximum amount Plaintiff could have received under the 2004 Incentive Compensation Award plan exceeded two and a half times her salary, Plaintiff's actual sales and expense ratio warranted a lower award. (*See* Ex. 4 to Def.'s Mot. for Summ. J. at 2; Pl.'s Dep. 291:1-292:10.) Plaintiff filed this action in January of 2007, seeking a judgment against Defendant in an amount reflecting what she contends is the proper bonus payment.[1]

---

[1] It is unclear exactly how much Plaintiff seeks: the Complaint alleges $158,250, but Plaintiff contends in her deposition that she is owed $162,740. (Compl. ¶ 13; Pl.'s Dep. 141:6-13.)

3

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his .

4

. . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

DISCUSSION

## I.  Choice of Law

To resolve the pending motion, the Court must first determine which state's substantive law applies to Plaintiff's claim. The Court will apply the conflict of laws rules of the forum state, Georgia, to this breach of contract action. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) ("A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state."). Georgia has adopted the general rule that where a contract contains no choice of law or jurisdiction provision, the location where the contract was executed determines the applicable law under the principle of *lex loci contractus. Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984). Where the contract contemplates execution in another jurisdiction, however, that state's law will apply. *Id.* In this case, a factual dispute exists regarding whether Plaintiff executed the contract in Georgia or Florida: Plaintiff argues that she entered into an oral

5

contract in Georgia, and Defendant contends that Plaintiff executed a written contract in Florida which exclusively governs her entitlement to a bonus. Since there is no conflict between Georgia and Florida law regarding the issues presented by the pending motion, the Court finds it unnecessary to resolve the foregoing factual dispute. The substantive law of both Georgia and Florida require the same result.

**II.  Plaintiff's Breach of Contract Claim**

Plaintiff's sole theory of recovery is for breach of contract.[2] Plaintiff alleges that she, Kozacik, and Carson entered into a binding oral contract whereby Plaintiff was promised a bonus of "up to two and a half times her salary" for exceeding her sales quota. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 4.)  The parties do not dispute that Plaintiff exceeded her sales quota for 2004 and that

---

[2]During Plaintiff's deposition, Plaintiff's counsel mentioned that it was "possible" that Plaintiff also has claims for quantum valebant and/or promissory estoppel. (Pl.'s Dep. 106:13-107:14.)  Neither the Complaint nor Plaintiff's response to Defendant's motion mention such claims. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  "Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.*; *accord Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990) (rejecting the contention that "where a party includes information in declarations or affidavits related to a summary judgment motion which might form the basis of an argument or defense, but the party fails to articulate such an argument" the district court must consider the argument sua sponte). Because Plaintiff's brief makes no mention of any other claim, the Court concludes that Plaintiff's only claims are for breach of contract and attorneys' fees. (Compl. ¶¶ 6-13.)

6

Plaintiff was therefore entitled to a bonus; instead, the parties contest the amount of that bonus.

Defendant argues that the bonus promised to Plaintiff was simply the company's Incentive Compensation Award. Defendant contends that therefore, Plaintiff's bonus amount was exclusively governed by the terms of her signed Incentive Compensation Award plan, which clearly set forth the formula for calculating such awards. Although generally "[a] party has a duty to learn and know the contents of a proposed contract before [s]he signs and delivers it and is presumed to know and understand its contents, terms and conditions," Plaintiff contends that she never signed the Incentive Compensation Award plan and thus is not bound by its terms. *Sabin v. Lowe's of Fla., Inc.*, 404 So.2d 772, 773 (Fla. Dist. Ct. App. 1981); *accord Conklin v. Liberty Mut. Ins. Co.*, 240 Ga. 58, 59, 239 S.E.2d 381, 382 (1977).

Even assuming, in Plaintiff's favor, that the signature on the Incentive Compensation Plan is not Plaintiff's, summary judgment is still appropriate in favor of Defendant. In the absence of a signed document governing her entitlement to a bonus, Plaintiff must establish that the representations made by Kozacik and Carson amounted to definite terms of an oral contract which were breached when Plaintiff received an Incentive Compensation Award that was less than she was allegedly promised. *See, e.g., A.R. Holland, Inc. v. Wendco Corp.*, 884 So.2d 1006, 1008 (Fla. Dist. Ct. App. 2004) (finding that it is the plaintiff's burden to establish that "(1) a contract existed, (2) the contract was breached, and (3) damages

7

flowed from that breach"); *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279, 469 S.E.2d 712, 713 (1996). Plaintiff's only claim is that she is entitled to a 2004 bonus for her 2004 sales, and she admits that her 2004 bonus was correctly calculated pursuant to the 2004 Incentive Compensation Award plan. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 2; Pl.'s Dep. 292:4-10.) Thus, the only way Plaintiff can meet her burden to establish breach of the alleged oral contract in this case is to show that either Kozacik and Carson promised her a bonus plan different from the 2004 Incentive Compensation Award plan or that Kozacik and Carson misrepresented the formula for calculating the 2004 Incentive Compensation Award plan. Plaintiff can do neither.

First, no genuine issues of material fact exist as to whether Kozacik and Carson promised Plaintiff a bonus plan independent of the Incentive Compensation Award program. Plaintiff concedes that she understood that the bonus referred to by Kozacik and Carson was Defendant's standard Incentive Compensation Award available to all sales representatives and described in Defendant's written Incentive Compensation Award plan. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 25; *see also* Pl.'s Dep. 92:12-23.) Plaintiff also admits that prior to May of 2004, "[n]o one ever communicated to [her] that her bonus would be calculated in any way that was different from the bonus formula set forth in [Defendant's] standard Incentive Compensation Plan." (Pl.'s Resp. to Def.'s Statement of Facts ¶ 32; *see also* Ex. 6 to Def.'s Mot. for Summ. J. (specifying Plaintiff's

8

date of hire as District Manager).) This evidence directly refutes any assertion that Kozacik and Carson promised Plaintiff a bonus program other than the standard Incentive Compensation Award plan during their June 2003 meetings.

Plaintiff has also failed to demonstrate the existence of genuine issues of material fact regarding whether Kozacik and Carson misrepresented the Incentive Compensation Award plan formula.[3] Both Kozacik and Carson aver that during the Atlanta and North Carolina meetings, they spoke with Plaintiff only generally regarding the revision of the Incentive Compensation Award program. (*See, e.g.,* Kozacik Aff. ¶¶ 6-7, Oct. 9, 2007; Carson Aff. ¶¶ 7-8.) Kozacik and Carson further testify that they "never promised [Plaintiff] a particular bonus amount or guaranteed that she would earn a percentage of her salary if she made her sales quota." (Carson Aff. ¶ 7; *accord* Kozacik ¶ 7.) Both Kozacik and Carson contend that they informed Plaintiff that she would not be eligible for a bonus until 2004 and that her bonus would be calculated according to a formula set forth in the Incentive Compensation Award plan. (Kozacik Aff. ¶ 6; Carson Aff. ¶ 8.) Neither Kozacik nor Carson had the authority to make any offer of employment or authorize a bonus structure

---

[3] In addition, Plaintiff's assertion that Kozacik and Carson had apparent authority to bind Defendant to a particular bonus structure because of their "job titles," (Pl.'s Dep. 143:3-144:18), is belied by the record. Plaintiff acknowledges that she knew that Sari Factor, the President of the School Education Group, generally approved all hiring package offers, including all bonus arrangements. (Pl.'s Dep. 66:11-25; *see also id.* at 39:9-40:21.)

9

different than that found in the Incentive Compensation Award plan. (Kozacik Aff. ¶ 4; Carson Aff. ¶ 7.)

Plaintiff has failed to rebut this evidence; in fact, Plaintiff's testimony is entirely consistent with the sworn affidavits of Kozacik and Carson. Plaintiff first admits that Kozacik and Carson may not have actually promised her a bonus equivalent to two or two and a half times her salary; she concedes that although she does not specifically remember, it is "possible" that Kozacik and Carson were simply referring to the maximum amount she could earn under the revised Incentive Compensation Award program.[4] (Pl.'s Dep. 218:12-18.) Plaintiff also admits that she was promised a bonus of "up to" two and a half times her salary. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 4.) Plaintiff acknowledges that she understood that the bonus Kozacik and Carson were referring to was Defendant's standard Incentive Compensation Award and that the formula for calculating the award was contained in a written Incentive Compensation Award plan. (Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 25.) Plaintiff further concedes that she knew the plan and its terms would not be published until April of 2004, and no one would know what the terms of the plan would be until it was published. (*See* Pl.'s Dep. 92:1-3 ("[N]o one ever knew the formula . . . until you so-called got it in April.").)

---

[4]This representation is consistent with the Incentive Compensation Award plan for 2004. The record establishes that it was possible for Plaintiff to earn more than two and a half times her 2004 salary by meeting certain requirements. (Ex. 4 to Def.'s Mot. for Summ. J at 2.)

10

Plaintiff also admits that she understood that the Incentive Compensation Award formula would contain a sales quota and an expense component and would be similar to the bonus structure in effect during her previous stint of employment. (Pl.'s Dep. 97:14-19). Plaintiff further admits that although she never reviewed it, she was aware during her meetings with Kozacik and Carson that the 2003 Incentive Compensation Award plan had already been finalized and that it was available for her review. (Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 28-29.) Plaintiff has thus produced insufficient evidence to allow the Court to conclude that the bonus award she actually received was different from the award she was allegedly promised. Accordingly, Plaintiff's claim for breach of contract must fail.[5]

---

[5] Moreover, it appears unlikely that Plaintiff can demonstrate mutual assent as to the essential terms of the alleged oral contract. "In order to state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Rubenstein v. Primedica Healthcare, Inc.*, 755 So.2d 746, 748 (Fla. Dist. Ct. App. 2000); *see also Clark v. Schwartz*, 210 Ga. App. 678, 679, 436 S.E.2d 759, 760 (1993) ("A contract is not complete and enforceable until there is a meeting of the minds as to all essential terms.").

In correspondence to Carson dated after Plaintiff accepted her position, Plaintiff stated, "We need to discuss and agree upon a bonus formula when we get together in Arizona." (Def.'s Ex. 5 to Pl.'s Dep.) In this correspondence, Plaintiff also attempted to "confirm[]" the parties' "verbal agreement[]" that (1) her bonus would be two times her salary, or $124,000; (2) that she was "in a bonus position effective July 7, 2003"; and (3) that "[a]ll sales in my Florida territory occurring in the calendar year 2003 will contribute to my bonus payable April 2004." (Def.'s Ex. 5 to Pl.'s Dep.; *see also* Def.'s Ex. 6 to Pl.'s Dep.) In her deposition, however, Plaintiff admits that she understood from the outset that she would not be eligible to receive a bonus until 2004, payable in 2005. (Pl.'s Dep. 88:25-89:4.) When asked to explain this apparent inconsistency, Plaintiff stated that she "was pushing for a bonus [to be paid in] 2004" and that her "confirmation" letters were a negotiation

**III. Attorney Fees**

In light of the Court's ruling on Plaintiff's breach of contract claim, the Court finds no basis for Plaintiff's remaining claim for attorney fees. Accordingly, summary judgment is granted in favor of Defendant on this claim also.

CONCLUSION

In sum, Plaintiff has failed to direct the Court to record evidence demonstrating the existence of genuine issues of material fact as to her claim for breach of an oral contract. Accordingly, the Court grants Defendant's Motion for Summary Judgment (Doc. 14).

IT IS SO ORDERED, this 2nd day of July, 2008.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

tactic. (*Id.* at 186:18-25.) Plaintiff also explained that she intentionally included incorrect terms in her "confirmation" letters in hopes that Carson would respond with a writing confirming the correct terms. (Pl.'s Dep. 193:1-5.)

This evidence not only undermines Plaintiff's assertion that the parties had agreed on a "certain and definite" offer, but it also indicates that Plaintiff was attempting to negotiate the terms of her bonus even after she accepted the sales representative position. There can be no mutual assent if the parties continue to negotiate the essential terms of the contract. *See, e.g., Jacksonville Port Auth. v. W.R. Johnson Enters., Inc.*, 624 So.2d 313, 315 (Fla. Dist. Ct. App. 1993); *Peacock v. Chegwidden*, 238 Ga. App. 328, 333, 518 S.E.2d 760, 765 (1999) (affirming grant of summary judgment on the plaintiff's breach of contract claims because the evidence showed no meeting of the minds, but "only incomplete and ongoing negotiations" as to essential terms of the contract).